IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DONALD W. PETTIT, JR., | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 07-344-N-LMB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Donald W. Pettit, Jr.'s Petition to Review the final decision of Commissioner of Social Security (Docket No. 1) denying his claim for Social Security disability benefits under Title II of the Social Security Act, 42 U.S.C. § 301, *et seq*. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

I.

ADMINISTRATIVE PROCEEDINGS

On November 22, 2004, Donald W. Pettit, Jr. ("Petitioner" or "Claimant") applied for disability insurance benefits under Title II (AR 50-56). Plaintiff alleged disability beginning January 1, 2004 due to "severe fibromyalgia; chronic fatigue syndrome; [and] bad back." (AR 58).

Petitioner previously filed for and received social security disability payments based upon a diagnosis of fibromyalgia. (AR 53-56, 72-73). Petitioner alleges that in 1997 he decided to try

**MEMORANDUM DECISION AND ORDER - 1**

working again and purchased a business with the hope that self-employment would allow him to enjoy a more flexible schedule that would accommodate his health issues. (AR 73, 74-75). Petitioner further alleges that he contacted the Social Security Administration when he decided to go back to work and was told that if he found he could no longer work, he could obtain disability benefits again as a matter of course upon re-applying. *Id.*

Petitioner's 2004 application was denied initially on November 2, 2005 (AR 40) and again upon reconsideration on April 28, 2005 (AR 45). On May 25, 2005, Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (AR 35). The ALJ held a hearing on January 4, 2007 in Spokane, Washington at which time Petitioner, represented by counsel, appeared and testified. (AR 22, 235-36). Also testifying were Petitioner's wife, Kristy Pettit (AR 250), and vocational expert, K. Diane Kramer (AR 251).

At the time of the hearing, Petitioner was 48 years old. (AR 236). Petitioner testified to the following ailments: fibromyalgia, back pain, diarrhea, breathing problems, headaches with accompanying nausea, and gout. (AR 238-39). Petitioner also testified that he has difficulties sleeping and maintaining concentration when he is awake. (AR 244-45).

Petitioner's wife confirmed Petitioner's testimony (AR 251). In addition, she testified that work was extremely important to Petitioner, who is a fourth generation logger, which is why they decided to purchase a logging business. *Id.* Petitioner's wife further testified that Petitioner's attempt at self-employment failed and they nearly "lost everything." *Id.*

The vocational expert testified that Petitioner had past work experience as a logging operator, truck driver, and logging business owner, all requiring medium to heavy exertional levels. (AR 252-53). The vocational expert further testified that, based on Petitioner's

**MEMORANDUM DECISION AND ORDER - 2**

testimony, he would not be able to perform these past jobs or any other identifiable work. (AR 253, 255). However, based on the ALJ's posed hypothetical, assuming Petitioner is able to perform at the light exertional level with some functional restrictions, the vocational expert opined that Petitioner would be able to perform the jobs of routing clerk and cashier II. (AR 254-55).

On January 18, 2007, the ALJ issued a decision denying Petitioner's claim for benefits. (AR 13). The ALJ found that Petitioner has the severe impairment of chronic pain and maintained the residual functional capacity to perform work at the light exertional level provided that he is able to change his position every hour. (AR 15, 18). Further, considering claimant's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that he can perform. (AR 20).

Petitioner requested that the Appeals Council review the ALJ's decision. (AR 9). The Appeals Council received additional evidence in the record, including a letter from counsel and additional medical records (AR 8), and denied Petitioner's request on January 18, 2007 making the ALJ's decision the final decision of the Commissioner of Social Security (AR 5-7).

Having exhausted his administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ's decision is in error, because: (1) the evidence demonstrates that Petitioner suffers from the severe impairments of fibromyalgia and chronic pain syndrome and (2) the ALJ improperly rejected the testimony of Petitioner and his wife. *Petitioner's Brief*, p. 7 (Docket No. 11-2). For relief, Petitioner requests that the ALJ's decision be reversed or, in the alternative, this matter be remanded in order to allow the ALJ an opportunity to further evaluate the evidence. *Id.* at 1.

**MEMORANDUM DECISION AND ORDER - 3**

## II.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

**MEMORANDUM DECISION AND ORDER - 4**

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

## III.

## DISCUSSION

### A.   Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step, sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997). The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20

**MEMORANDUM DECISION AND ORDER - 5**

C.F.R. § 404.1520(a)(4)(I).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity at any time relevant to the decision.  (AR 15).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ found that Petitioner has the severe impairment of chronic pain. (AR 15-16).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this respect, the ALJ concluded that Petitioner's severe impairments do not meet or equal any listing of impairments.  (AR 17).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ concluded that Petitioner does not have the residual functional capacity to perform any of his past relevant work.  (AR 19-20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

Based on a vocational expert's testimony, the ALJ found that claimant retains the ability to do alternate work and there are jobs that exist in significant numbers in the national economy

**MEMORANDUM DECISION AND ORDER - 6**

that Petitioner can perform. (AR 20-21). Specifically, the ALJ determined that Petitioner could perform the jobs of routing clerk and cashier II. (AR 21). Accordingly, the ALJ concluded that Petitioner is not disabled under the Social Security Act. (AR 21).

**B.     Analysis**

Petitioner argues that the ALJ erred in rejecting his testimony and that of his wife and further erred in evaluating the evidence regarding his fibromyalgia.

**1.     Rejecting Petitioner's Testimony**

To decide whether to accept a claimant's subjective symptom testimony, an ALJ must perform a two-step analysis. In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptom alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "The claimant . . . need not show that [the] impairment could reasonably be expected to cause the severity of the symptom . . . alleged; [the claimant] need only show that it could reasonably have caused *some degree* of the symptom." *Id.* at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)) (quotations omitted).

If the claimant meets the first step, the ALJ must move on to the second step and determine whether claimant's subjective testimony is credible. *See Id.* In this second step, unless there is evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d at 1281. To fulfill this requirement, the ALJ must state "specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Id*. at 1284; *see Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

**MEMORANDUM DECISION AND ORDER - 7**

In this case, the ALJ concluded that there was sufficient evidence to support a finding that the Petitioner experienced chronic pain as a severe impairment. Therefore, it is undisputed that there is sufficient objective medical evidence in the record regarding Petitioner's chronic pain. Further, there is no evidence of malingering. Therefore, in order to justify the rejection of Petitioner's pain testimony, the ALJ must provide specific, clear and convincing reasons for doing so.

The ALJ provided the following justification for his decision to reject Petitioner's testimony:

> Having considered the claimant's assertion of disability, the undersigned finds that his subjective complaints regarding the extent of his functional limitations are not fully credible. [1] He has testified to and reported that he is unable to work due to his severe fibromyalgia, however, as outlined above, there is no evidence in the record presented here to indicate that the claimant has significant problems with fibromyalgia. [2] He testified that he could sit 30-60 minutes and did not appear to have any problems sitting through the 40 minute hearing. [3] He testified that he was generally unable to stand, yet at Exhibit 3E, he stated he was unable to stand on concrete floors for more than an hour. [4] He testified that his back goes out 8-10 times a month and puts him down for 2-3 days, he has diarrhea for days at times, has breathing problems, and has headaches for months at a time. However, he did not report any of these problems to Dr. Riggs or Dr. Wiesenhutter. [5] Review of chiropractic records at 5F indicate frequent treatment, but no indications of the significant problems he testified to. [6] Indeed, it appears he had exacerbations of pain related to intensified activities such as lifting a generator, clearing brush, being very active, rolling over a 4-wheeler, etc. [7] He testified to difficulties remembering things, yet at Exhibit 5E, he indicates he is able to pay bills, count change, handle a savings account, and use a checkbook. He does report that his wife double-checks his money decisions. [8] He has claimed to be unable to work since January 1, 2004, however, he did work in his log yard business (although not full time) and in June 2005 told Dr. Wiesenhutter he had been unable to work for only the past several months.

(AR 19).

The ALJ's reasons for rejecting Petitioner's testimony are sufficiently specific; however, there are significant analytical and evidentiary issues with each of the justification listed above.

**MEMORANDUM DECISION AND ORDER - 8**

Therefore, the ALJ's decision to reject Petitioner's testimony is not supported by clear and convincing reasons.

The ALJ's first reason to reject Petitioner's testimony is that, despite Petitioner's claimed disability, "there is no evidence in the record presented here to indicate that the claimant has significant problems with fibromyalgia." (AR 19). While the ALJ ultimately came to his own conclusion regarding the sufficiency of the fibromyalgia evidence, there is significant evidence in the record to support a finding that Petitioner has significant problems with fibromyalgia. First, Petitioner was diagnosed with and obtained disability benefits for fibromyalgia between 1992 and 1997. (AR 217). Second, the record reflects that two treating physicians have diagnosed Petitioner with fibromyalgia, including rheumatologist, Dr. Craig Wiesenhutter, who diagnosed Petitioner with fibromyalgia in 1991 (AR 213-216) and again in June 2005 (AR 217-218) and rheumatologist, Dr. Sherry Wu, who diagnosed petitioner with fibromyalgia in February 2007. (AR 227-229).[1] In addition, the ALJ found that Petitioner experienced chronic pain, a symptom of fibromyalgia, at the severe impairment level. (AR 15). Thus, a review of the record demonstrates that there is at least some evidence indicating that Petitioner has significant problems with fibromyalgia. Accordingly, the ALJ's first stated reason for rejecting Petitioner's credibility does not constitute a persuasive reason to reject his testimony.

The ALJ's second reason for rejecting Petitioner's testimony is that Petitioner sat through the 40-minute hearing without apparent problem, but testified that he could sit for 30-60 minutes

---

[1] Medical reports obtained after the date last insured may be relevant to assess the claimant's disability prior to the date last insured. *Smith v. Bowen*, 894 F.2d 1222, 1225 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER - 9**

at a time. There is no conflict with this evidence; it is entirely consistent and is not a persuasive reason to discredit Petitioner's testimony.

The ALJ's third reason for rejecting Petitioner's testimony is that Petitioner testified that he could not stand, but elsewhere in the record Petitioner claimed that he merely was unable to stand on concrete floors for more than an hour. (AR 19). The problem with this stated reason is that Petitioner never claimed that he was unable to stand. At the hearing, he testified that he had difficulty standing and, when he is cooking, he has to lean against the counter. (AR 243). In addition, he consistently testified that he was unable to stand for long periods of time on concrete floors. (AR 83). Thus, the ALJ's third-stated reason for rejecting Petitioner's testimony is not persuasive.

The ALJ's fourth-stated reason for rejecting Petitioner's testimony is that Petitioner did not report to either Dr. Rigg or Dr. Wiesenhutter that his back goes out 8-10 times a month and puts him down for 2-3 days, he has diarrhea for days at times, has breathing problems, and has headaches for months at a time. (AR 19). However, the medical record reflects that Petitioner did seek medical treatment for these impairments. For example, Petitioner reported to Dr. Riggs in November 1994 and March 1997 that he was suffering from repeated bouts of diarrhea. (AR 116-17, 122). In addition, in June 2005, Dr. Wiesenhutter noted Petitioner's past medical history of "chronic stomach complaints." (AR 217).

Petitioner also reported to Dr. Rigg his frequent back problems prompting Dr. Rigg to express concern in October 1997 with Petitioner's frequent visits to the chiropractor (AR 143-44). Similarly, in February 2003, Dr. Rigg noted that Petitioner "winds up having his low back . . . go out a couple of times a week." (AR 164).

**MEMORANDUM DECISION AND ORDER - 10**

Furthermore, as the ALJ elsewhere noted, it is clear that Petitioner reported his back pain to the chiropractor. (AR 16). While Petitioner did not relate the breathing and headache problems to either Dr. Riggs or Dr. Wiesenhutter, he did report the headaches to his chiropractor (AR 219) and both the headaches and breathing problems to Dr. Wu (AR 227-229).

In light of the above, the ALJ's fourth reason for rejecting Petitioner's testimony is not persuasive. Petitioner reported to his doctors substantially the same array of symptoms he described at the hearing.

The ALJ's fifth and sixth reasons for rejecting Petitioner's testimony are related. These reasons include that there is no objective medical evidence that would support the frequent chiropractic treatment and the record reflects "exacerbations of pain related to intensified activities such as lifting a generator, clearing brush, being very active, rolling over a 4-wheeler, etc." (AR 19). These reasons for rejecting Petitioner's testimony are somewhat persuasive. The physical evidence in the record to support the Petitioner's claimed back pain is limited (AR 137) and there is evidence in the record indicating that Petitioner sought medical attention due to sudden injuries. *See* AR 132 (branch fell on back while logging July 26, 1995), AR 139 (four-wheeler rolled over Petitioner April 25, 1997), AR 143 (rolled over on a four-wheeler October 21, 1997), AR 145 (cleared brush November 6, 1997), AR 176 (lifted a generator June 17, 1999) and AR 177 (rolled over on a four-wheeler August 17, 1999). Nonetheless, the evidence regarding sudden injuries is old, as it comes from 1995-1999, and there is ample evidence that Petitioner sought medical treatment where no traumatic event was involved. The over-all weight of the medical evidence supports Petitioner's claim of an underlying, chronic impairment.

**MEMORANDUM DECISION AND ORDER - 11**

Finally, it is important to note that the lack of objective medical evidence regarding Petitioner's back pain is not a sufficient reason to discredit his pain testimony. Plaintiff has been diagnosed with fibromyalgia, an impairment that causes pain and often eludes objective measurement. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir.2003)). Therefore, even though there may be a lack of objective medical evidence to support the frequent chiropractic treatment, the frequency of the chiropractic treatment itself provides strong support for Petitioner's pain testimony, which, in turn, supports the fibromyalgia diagnosis. Therefore, the ALJ's fifth and sixth reasons for rejecting Petitioner's testimony are not sufficiently persuasive.

The ALJ's seventh-stated reason for rejecting Petitioner's testimony is based on another purported inconsistency in the record. Petitioner testified to difficulties remembering things, yet reported to the Social Security Administration that he is able to pay bills, count change, handle a savings account, and use a checkbook. (AR 83). Petitioner reported that he can do these things on a form provided by the Social Security Administration, in which he checked certain boxes indicating that he is still able to make certain money decisions. *Id.* However, in this same form, in a narrative explanation to the question "[h]as your ability to handle money changed since the illnesses . . . began," Petitioner noted "[m]y wife always double checks my money decisions." (AR 84). In addition, Petitioner reported before the hearing that he could not concentrate long enough to complete the bookwork associated with logging business. (AR 77). Thus, Petitioner's testimony at the hearing is not inconsistent with the record.

The ALJ's eighth-stated reason for rejecting Petitioner's testimony is that Petitioner has claimed that he has been unable to work since January 1, 2004, however, he did work in his log

**MEMORANDUM DECISION AND ORDER - 12**

yard business and in June 2005, told Dr. Wiesenhutter he had been unable to work for only the past several months. (AR 217). This final reason for rejecting Petitioner's testimony is also unpersuasive. Petitioner explained that his work with the logging business was extremely limited and did not involve physical activity. (AR 77). Petitioner purchased the business in order to be self-employed and work when he was able. (AR 76). By December 2004, he was in the process of liquidating the business. (AR 77). It is not clear how long this process took, but it seems logical that it could take several months, and therefore would not be entirely inconsistent for Petitioner to report to his doctor that he had been working in some limited capacity at liquidating the business for some period of time in 2005.

In sum, there are serious problems with each of the ALJ's eight-stated reasons for rejecting Petitioner's testimony. As a consequence, the decision to reject Petitioner's testimony is not supported by clear and convincing evidence and the decision is in error.

### 2. Rejecting the Testimony of Petitioner's Wife

Generally, "friends and family members are competent to testify as to [a claimant's] condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). "[T]estimony from lay witnesses who see the claimant everyday is of particular value." *Regenittur v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). "Such testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness. " *Dodrill*, 12 F.3d at 919.

In the instant case, Petitioner's wife did not testify in any detailed way at the hearing. She merely agreed that her husband's testimony was correct and explained why her husband felt

compelled to work in 1997 even though he had been collecting disability. (AR 251). Therefore, it was not necessary for the ALJ to conduct a separate assessment of Petitioner's wife's testimony and credibility. Essentially, the ALJ rejected this testimony for the same reasons he rejected Petitioner's testimony, i.e., he determined that it was inconsistent with the record. As previously discussed, this decision is not supported by clear and convincing reasons; therefore, the decision to reject Petitioner's wife's testimony was also in error.

### 3. Step Two: Identifying Severe Impairments

The ALJ determined that Petitioner's chronic pain constitutes a severe impairment but the other alleged impairments do not. (AR 15-16). Petitioner argues that such a determination is in error for two reasons: (1) chronic pain is not an impairment but a symptom of an underlying impairment and (2) the medical evidence shows that Petitioner has fibromyalgia and chronic pain syndrome at the severe level. *Petitioner's Brief*, p. 6 (Docket No. 11-2).

Pain is a symptom and symptoms alone do not constitute impairments. *See* SSR 96-4p. In addition, there must be medical signs or laboratory findings to support the existence of any impairment, *see* SSR 96-7p. Therefore, while chronic pain syndrome is routinely considered an independent impairment, it is typically coupled with other impairments. *See Hubble v. Social Sec. Admin.*, 2008 WL 3307144 (9th Cir. 2008) (upholding district court's finding that claimant suffered from degenerative joint disease and chronic pain); *Huff v. Astrue*, 275 Fed. Appx. 713 (9th Cir. 2008) (holding ALJ's finding of degenerative disc disease as severe impairment necessarily included chronic back pain claim).[2]

---

[2] While these decisions are unreported, there are reported decisions from other circuits concluding the same. *See e.g. Britton v. Astrue*, 521 F.3d 799 (7th Cir. 2008) (ALJ found severe impairments, including chronic pain syndrome, hepatitis, fibromyalgia, degenerative disc disease

**MEMORANDUM DECISION AND ORDER - 14**

Here, the ALJ did not find that Petitioner did not have *any* impairments other than chronic pain. Instead, he found that Petitioner had only one *severe* impairment: chronic pain. (AR 15-17). The ALJ summarized Petitioner's medical history and noted that the claimant had a history of fibromyalgia and depression, but these impairments were "not shown to have posed more than a minimal limitation on his current ability to perform work-related activities." (AR 17). In this case, such a determination makes little sense, because the only diagnosis in the record to support Petitioner's chronic pain complaints is fibromyalgia.

Fibromyalgia is a difficult diagnosis. As previously noted, fibromyalgia does not lend itself to objective medical findings. *See Benecke v. Barnhart*, 379 F.3d at 594. Nonetheless, there are objective medical findings that can be used to support such a diagnosis:

> [fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and "the only symptom that discriminates between it and other diseases of a rheumatic character" multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996)).

In this case, the ALJ focused upon the trigger point analysis and determined that Petitioner's diagnosis of fibromyalgia was not supported, because the medical reports reflected only two to three possible trigger points. (AR 17). In support of this conclusion, the ALJ relied

---

and others); *Howe v. Astrue*, 499 F.3d 835 (8th Cir. 2007) (ALJ found severe impairments, including chronic pain syndrome, cervical thoracic radiculopathy, and mild bilateral carpal tunnel syndrome).

**MEMORANDUM DECISION AND ORDER - 15**

upon the observations of treating physicians, Dr. Riggs, a general practitioner, and the findings of Dr. Wiesenhutter, a rheumatologist. *Id.*

The central problem with the ALJ's analysis is the undue weight placed on Dr. Riggs's opinion. First, Dr. Riggs did not definitively rule out fibromyalgia; he simply questioned the diagnosis. (AR 155, 164). Second, Dr. Riggs is Petitioner's general practitioner and the two rheumatologists in the record made definitive fibromyalgia diagnoses, Dr. Wiesenhutter in June 2005 and Dr. Wu in February 2007 (AR 227-29).[3] The rheumatologists' opinions are given greater weight than those of other physicians, because rheumatology is the relevant specialty for fibromyalgia. *See Benecke v. Barnhart*, 379 F.3d 587, 595 n.8 (9th Cir. 2004); 20 C.F.R. 404.1527(d). Therefore, while the ALJ may have doubted Dr. Wiesenhutter's diagnosis for lack of sufficient trigger points, he may not reject the opinion based on Dr. Riggs's musings in his chart notes.[4] On remand, the ALJ must consider Dr. Wu's evaluation and reevaluate Petitioner's fibromyalgia diagnosis.

## IV.

## CONCLUSION

Generally, credibility determinations are the province of the ALJ. *Fair v. Bowen*, 885 F.2d at 604. However, in the instant case, the ALJ's stated reasons for rejecting Petitioner's

---

[3] While this diagnosis came after Petitioner's last date insured, it is relevant to a determination of Petitioner's condition in 2004, especially in light of the fact that Dr. Wiesenhutter also diagnosed Petitioner with fibromyalgia in 1992. *See Smith v. Bowen*, 894 F.2d at 1225.

[4] At the time of the hearing, the ALJ did not have the benefit of Dr. Wu's February 2007 evaluation. While the evaluation is dated approximately three years after the reported on-set date, Dr. Wu found 18 of 18 possible tender points. (AR 228).

**MEMORANDUM DECISION AND ORDER - 16**

testimony do not withstand the scrutiny of a careful and thorough review. In addition, the ALJ's decision to reject the medical opinion of specialist, Dr. Wiesenhutter, cannot be supported by the indefinite statement of Petitioner's general practitioner. Therefore, the case must be remanded for proper analysis of Petitioner's credibility and the medical evidence of fibromyalgia.

V.

## ORDER

Based on the foregoing, the decision of the Commissioner is reversed and this action is remanded for further review consistent with this Order.



DATED: **August 27, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**